Derbigny, J.
delivered the opinion of the court. On the subject of sales, our code contains this general disposition: “all sales of immoveable property or slaves, shall be made by authentic acts, or under private signature. All verbal sales of any of these things shall be null, *382 as well for third persons as for contracting parties themselves; and the testimonial proof of them shall not be admitted." Civ. Code, 344, art. 2.
The appellee maintains that this provision is not applicable to judicial sales, of which he contends that this is one. The appellant insists upon its embracing all sorts of sales, public as well as private, and calls on the appellee to shew any exception to that general rule.
To decide this point, we are unaided by precedents or by commentators, this being a provision peculiar to our laws. Our inquiry shall, therefore, be confined within a narrow circle.
Our law requires all sales of real estates or slaves to be made by authentic act or under private signature, and pronounces all verbal sales of such things to be null. We believe that this provision extends to all sales, public as well as private. But, is it necessary that the authentic act of sale should, in every case, bear the signatures of the parties? We think not. In sales made by public officers, the written instrument drawn by them is surely an authentic act: yet, in sheriff's sales, at least, the written acceptance of the purchaser is not required. Is there any more necessity for it in sales made by auctioneers, under the authorization of justice? Is there more occasion for it in *383 a case like this, where the register of the court of probates sells property at auction, under a decree of that court? We think not-officers authorized by law to make public sales are certainly invested with the necessary power to certify those sales to the world, whether the parties do or do not chuse to acknowledge them under their hand. The public officer may there be considered as the medium through which the parties contract, and his act as the act of both.
If we inquire into the particular rules which are prescribed to auctioneers generally, we find that it is made their duty, "immediately after the sale, to deliver to the purchaser a memorandum of the sale and purchase, designating the object and day, so that the purchaser may cause the same to be registered, according to law, in the office of the recorder of mortgages." Here then is a simple memorandum, under the hand of the auctioneer, considered by the law as complete evidence of the sale and purchase, and so far assimilated to an authentic act of sale as to be admissible among the records of the keeper of mortgages. Will it be pretended that the record of the clerk of the court of probates, certifying a sale made by order of that court, is inferior in dignity to the memorandum of an *384 auctioneer? That cannot be maintained. We think with the district judge, that the process verbal of sale, which the register writes on such occasions, in conformity to the act of the 3d of June, 1806, is evidence of its contents, without the written acceptance of the purchaser.
II. We now come to the second plea of the appellant, to wit, the existence of a redhibitory vice in the property sold.
The success of this plea rests upon the fol- lowing circumstance: immediately after the sale and delivery, this slave, instead of going where the appellant's agent sent him ran off was pursued, and committed an assault, for which he was condemned to death, and afterwards pardoned.
From this, the appellant concludes, that the slave had a redhibitory vice, previous to the adjudication. To support this allegation, he relies on the following article of our code, as governing this case, to the exclusion of all testimony : "If the defect appears immediately after the sale, or within the three following days, it shall be presumed that said defect existed before the sale, or at the time it was made." This provision seems to have been intended for cases of latent bodily defects, the origin of East'n *385 which is uncertain ; but as the appellant insists upon its applicability to his case, let us see how it will bear the application.
The vice, if any existed, was one of temper and disposition. Those are limited to three sorts : "having been guilty of some capital crime, being addicted to robbery, or in the habit of running away." The first vice does not admit of the application of the rule : that a man has been guilty of a capital crime, is not to be presumed from his subsequent conduct: the law does not speak of any such thing as the habit of committing crimes, hut of a crime committed. The second vice has nothing to do with this case. The third and last is the habit of running away. This slave, it is said, ran off, instead of going where the appellant’s agent had told him to go. Must this be received as a legal presumption that he was in the habit of running away? Shall a slave, who changes master, and runs off, to avoid going with him, be presumed to be in the habit of running away? Surely no such presumption can arise from this fact. Supposing, then, the article relied on to be at all applicable to this kind of vice, still the fact in this case does not authorize the presumption, so far as to render it unnecessary to support it by other proof, or to exclude contrary testi *386 mony. The district judge, therefore, acted correctly in admitting testimony as to the character of the slave; and that testimony having been perfectly satisfactory on the part of the plaintiff, the plea of the defendant must fail.
It is, therefore, ordered, adjudged and decreed, that the judgment of the district court be affirmed, with costs.